UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS AGUILAR MEDINA,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, *et al.*<br>Respondents. | Case No. 5:26-cv-04021-DKW-ACCV<br><br>ORDER GRANTING TEMPORARY RESTRAINING ORDER AND ORDERING PETITIONER'S IMMEDIATE RELEASE |

Before the Court is Petitioner Carlos Aguilar Medina's Application for Temporary Restraining Order (TRO Application). Dkt. No. 12. Petitioner presents uncontested evidence demonstrating that he has severe mental illness, he needs psychiatric and medical evaluation, and his ongoing detention poses a serious and foreseeable risk of further psychiatric deterioration and of another suicide attempt. The Court therefore GRANTS a temporary restraining order directing Petitioner's immediate release, as explained further below.

**BACKGROUND**

Immigration authorities most recently detained Petitioner in June 2026. Dkt. No. 8-1 at 2. Since being detained, Petitioner has experienced a variety of serious mental health issues. For instance, within days of his detention, Petitioner was

taken to Olive View – UCLA Medical Center after reporting chest pain. Dkt. No. 18 at 4. Soon after intake, Petitioner was found wrapping cords around his neck to strangle himself. *Id.* Petitioner was admitted to the hospital, where he remained for a week. *Id.* During that time, he continued making suicidal statements and reported hearing a voice telling him to kill himself. *Id.* He was prescribed medications for depression and anxiety. *Id.*

Upon discharge, Petitioner was immediately taken to ICE Adelanto Processing Center, where he remains detained today. *Id.* During an initial screening, despite having just been discharged from the hospital after attempting to strangle himself, he denied having done so. *Id.* at 123.

Two days later, Petitioner underwent a mental health review. *Id.* at 4. He reported hearing voices telling him to harm himself and thinking about suicide often. *Id.* He admitted to attempting suicide three times and reported feeling unstable. *Id.* The resulting report concurred, describing Petitioner as "not completely stable" while also noting that "[h]e [was] hearing self-harming voices." *Id.* Petitioner was diagnosed with an unspecified psychosis. *Id.* He was identified as meeting the *Franco-Gonzalez* class membership criteria,[1] and it was recommended that he be placed under observation.

During an initial suicide risk assessment, Petitioner reported having "ideas of killing [him]self." *Id.* at 5. Both Petitioner's overall acute suicide risk and his overall chronic suicide risk were determined to be moderate. *Id.* Again, Petitioner was diagnosed with an unspecified psychosis. Petitioner was admitted to "Level 2"

---

[1] In *Franco-Gonzalez v. Holder*, No. CV 10-02211 DMG DTBX, 2013 WL 3674492, at *2 (C.D. Cal. Apr. 23, 2013), the court certified a class consisting of "individuals who are . . . in DHS custody for removal proceedings in California . . . who have been identified by or to medical personnel, DHS, or an Immigration Judge, as having a serious mental disorder or defect that may render them incompetent to represent themselves in detention or removal proceedings, and who presently lack counsel in their detention or removal proceedings." The court granted a permanent injunction requiring that a qualified representative be provided to class members who are incompetent to represent themselves. *Id.* at *20.

suicide watch with continuous observation, meaning behavioral health personnel were responsible for conducting at least daily follow-ups with Petitioner. *Id.*

During a subsequent psychiatric evaluation, Petitioner was again diagnosed with an unspecified psychosis and, this time, unspecified depression as well. *Id.* Although a doctor prescribed antipsychotic medication, Petitioner was discharged from suicide watch the next day. *Id.*

In early August 2026, Petitioner reported auditory hallucinations instructing him to commit suicide. *Id.* The on-call, mental health doctor was summoned. Although it was determined that an urgent mental health referral was required, Petitioner was returned to his dorm. *Id.* Still there four days later, Petitioner again reported experiencing auditory hallucinations compounded by his refusal to take his medication. *Id.*

Petitioner commenced this action by filing his original Petition on July 18, 2026. Dkt. No. 1. He filed a First Amended Petition on October 4, 2026. Dkt. No. 11. On the same day, Petitioner filed the TRO Application. Dkt. No. 12. Petitioner submitted various supporting documents, including a declaration from a psychiatrist, Dr. Alana Slavin. Dkt. No. 18. Dr. Slavin reviewed Petitioner's medical records and concluded that they reflect a serious mental illness. *Id.* at 6. According to Dr. Slavin, Petitioner requires urgent psychiatric and medical evaluation. *Id.* at 9. Dr. Slavin also states that Petitioner's continued detention at Adelanto poses a serious and foreseeable risk of further psychiatric deterioration and another suicide attempt. *Id.* at 10. Finally, Dr. Slavin opines that Petitioner's psychiatric condition is unlikely to stabilize in his current setting. *Id.*

## DISCUSSION

In his TRO Application, Petitioner argues, among other things, that he is likely to succeed on his claim that his current detention violates substantive due

process.[2] Dkt. No. 12-1 at 20. The Court ordered Respondents to respond on or before October 8, 2026. Dkt. No. 16. Respondents, however, filed nothing, causing Petitioner to highlight that failure. Dkt. No. 19. "[T]he failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting . . . of the motion." L.R. 7-12. Respondents' violation of this Rule, in short, is sufficient to grant the requested relief. *See, e.g.*, *Pablo Cristobal v. Semaia*, No. 5:26-cv-05310-DSR, 2026 WL 2925887, at *1 (C.D. Cal. Sept. 29, 2026) ("The Court deems Respondents' failure to file an Answer to the Petition in this case, despite having notice of their obligation to do so and an opportunity to comply, to be their consent to granting the relief sought in the Petition for Writ of Habeas Corpus.").

Even if the Court ignored Respondents' failures, relief would still be appropriate. To obtain a temporary restraining order, the movant must show each of four factors: (1) likelihood of success on the merits, (2) likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in favor of a temporary restraining order, and (4) a temporary restraining order is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where the non-movant is a government entity, the third and fourth factors merge. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc), *overruled on other grounds by Arizona All. for Retired Americans v. Mayes*, 186 F.4th 622 (9th Cir. 2026) (en banc). The Ninth Circuit utilizes a "sliding scale" approach, under which a strong showing of one of these factors allows a lesser showing on the others. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

---

[2]Petitioner is currently detained under 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021). Even if Petitioner is subject to mandatory detention, his detention remains subject to constitutional review. *See Sumano v. Chestnut*, No. 1:26-cv-04954-KES-CDB (HC), 2026 WL 2177112 (E.D. Cal. July 28, 2026) (finding substantive due process violation and ordering release of non-citizen subject to mandatory detention under 8 U.S.C. § 1226(c)).

Here, Petitioner has made a strong showing that being forced to remain detained without adequate psychiatric care, and despite clear and urgent psychiatric needs, will cause irreparable harm. The record that the Government did not take the time to address reflects that Petitioner has been diagnosed with both psychosis and depression. He has experienced command auditory hallucinations directing him to harm or kill himself on multiple recent occasions. Petitioner has, in fact, heeded these hallucinations, attempting to kill himself three times. Recently, when Adelanto's mental health doctor determined that Petitioner required "urgent" care, he was instead returned to his dorm without any such urgent care evident in the record.

Petitioner's continued detention thus poses a serious and foreseeable risk of further psychiatric deterioration and of another suicide attempt. Moreover, Petitioner's psychiatric condition is unlikely to stabilize in his current setting. Based on the foregoing, Petitioner has made a strong showing of irreparable harm. *See Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) ("Emotional injuries, psychological distress, and risk of suicide may constitute irreparable harm."); *see also Briones v. Dzurdenda*, No. 2:23-cv-00417-APG-DJA, 2026 WL 1587378, at *8 (D. Nev. June 3, 2026) ("Debilitating symptoms like paranoid delusions and auditory hallucinations along with the risk of suicide constitutes irreparable harm." (cleaned up)). Given the extreme nature of Petitioner's injury, he need only show "serious questions going to the merits." *All. for the Wild Rockies*, 632 F.3d at 1135. He has certainly met that standard, perhaps the reason for the Government's silence.

The Ninth Circuit has held that "[a]t a bare minimum," a person "detained under civil process—like [a person] accused but not convicted of a crime—cannot be subjected to conditions that amount to punishment." *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (cleaned up). Such "punitive conditions may be shown (1) where the challenged restrictions are expressly intended to punish, or (2) where the

challenged restrictions serve an alternative, non-punitive purpose but are nonetheless excessive in relation to the alternative purpose, or are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." *Id.* (cleaned up).

The issue here is whether Petitioner's continued detention is excessive in relation to the government's legitimate interests in protecting the community and preventing him from fleeing. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Courts in this circuit have held that immigration detention is excessive in relation to its purpose when the conditions in a detention facility endanger a detainee's life." *Sumano v. Chestnut*, No. 1:26-cv-04954-KES-CDB (HC), 2026 WL 2177112, at *4 (E.D. Cal. July 28, 2026). Given Petitioner's unrefuted evidence of his severe mental illness, his three past suicide attempts, and the substandard psychiatric care he has received at Adelanto, his continued detention presents a serious and foreseeable risk of further psychiatric deterioration and another suicide attempt, immediately jeopardizing Petitioner's life.

The serious questions concerning Petitioner's medical care also compel a finding that the balance of hardships tips sharply in his favor. Finally, as the Ninth Circuit has stated, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc). In short, Petitioner satisfies all of the *Winter* factors.

## **CONCLUSION**

1. Given the foregoing, Petitioner's TRO Application, Dkt. No. 12-1, is GRANTED.

2. Respondents are ORDERED to release Petitioner Carlos Aguilar Medina (A# 094-800-163) from their custody by no later than 5:00 p.m. (PDT) on October 14, 2026.

3. Respondents may use the time between the present and that mandatory

release time to afford U.S. Immigration and Customs Enforcement an opportunity to impose reasonable conditions of supervision, other than an ankle monitor. But in no event does this order allow Respondents to delay Petitioner's release past 5:00 p.m. (PDT), on October 14, 2026.

4. On or before October 15, 2026, Respondents must file a notice certifying compliance with this order.

5. The Court waives the posting of any bond or security that might be required by Fed.R.Civ.P. 65(c).

IT IS SO ORDERED.

DATED: October 13, 2026 at Honolulu, Hawai'i.

/s/ Derrick K. Watson
Derrick K. Watson
Chief United States District Judge